A94A0612. AUTOMATED DRAWING SYSTEMS, INC. v. INTEGRATED NETWORK SERVICES, INC. et al.
(447 SE2d 109)

Judge Harold R. Banke.

The appellees, Integrated Network Services, Inc. ("INS") and DLM Enterprises, Inc. ("DLM"), brought suit against the appellant,

---

Automated Drawing Systems, Inc. ("ADS"), for breach of an agreement to license a computer software program known as the D4 SOFTWARE program developed by the appellees. Alleging that ADS had violated an exclusive license to copy and sell the D4 SOFTWARE program in conjunction with a software program to be sold as the ADS PACKAGE, by marketing and selling the software programs without paying royalties due under the agreement, the appellees asserted claims for breach of contract and intentional tort based on fraud, theft by deception, and unjust enrichment through copyright infringement.

Following trial in the matter, the jury returned a general verdict in favor of the appellees for $108,000, plus $12,500 punitive damages. This appeal follows the denial of the appellant's motions to review certain evidence submitted to the jury, and for judgment n.o.v. or new trial.

1. The appellant attacks, on several grounds, the sufficiency of the evidence to support the verdict. None of the grounds asserted has any merit.

The licensing agreement provided that ADS would pay the appellees a royalty fee of $1,500 for each copy it sold of the ADS PACKAGE software program utilizing the appellees' exclusive D4 SOFTWARE source code as a component. The appellant argues that the evidence showed that the appellees had been paid for 53 out of 65 ADS PACKAGE sales made, which entitled them to only $18,000 in additional royalties. There was evidence that actually a total of 125 programs were sold, but the appellant denied liability for any royalties on those other sales because it had to modify the software to make it fully operational.

However, the agreement specified that ADS was to have no rights or access to the source code unless the appellees were unable to assist with maintenance or any problems that occurred; there was no provision permitting ADS to copy, modify or amend the program. Under these circumstances, the jury was authorized to find that ADS intentionally appropriated the appellees' source code to its own use by copying, modifying or altering it, in whole or in part, and in subsequently duplicating and selling its own software program derived from the appellees' program. Accordingly, the trial court did not err in refusing to disturb the verdict. See *Rodriguez v. Davis*, 202 Ga. App. 550 (3) (415 SE2d 41) (1992). This evidence of misappropriation of the software and withholding of royalties also authorized the award for damages in tort consistent with OCGA § 16-9-93 (g) and for punitive damages. OCGA § 51-12-5.1 (b).

The appellant is mistaken in its contention that the evidence failed to establish a violation of the Georgia Computer Systems Protection Act, OCGA § 16-9-90 et seq., on the ground that the Act re-

quires an actual physical invasion of a computer. In listing the types of property protected by the Act, OCGA § 16-9-92 (7) specifically includes computer programs.

2. The appellant also contends that the judgment should be set aside because the only duty arising independent of the contract was one of copyright interest, for which the federal courts have exclusive jurisdiction under 17 USCA § 301. However, federal copyright law does not preempt any rights or remedies under the common law or state statutes that are not equivalent to any of the exclusive rights within the general scope of copyrights. See *CMAX/Cleveland v. UCR*, 804 FSupp. 337, 358 (M.D. Ga. 1992). In the instant case, common law and the Georgia Computer Systems Protection Act provide remedies for the breach of the licensing agreement and tortious misappropriation of the appellees' software program, and those remedies are not the equivalent of any exclusive right within the general scope of copyright law.

3. The appellant complains that the trial court violated the parol evidence rule by allowing a witness to testify about matters outside the scope of the written agreement between the parties. However, the appellant has not indicated exactly what that objectionable testimony was, or what harm resulted. "Both error and harm must be shown affirmatively by the record before appellate relief is mandated." *Oglethorpe Power v. Sheriff*, 210 Ga. App. 299, 302 (4) (436 SE2d 14) (1993).

4. Lastly, the appellant contends that the trial court erred in denying its motion to review information contained in two computer disks entered in evidence over objection. These disks demonstrated the difference between the appellees' source code and the changes and modifications made by the appellant, and the jury was permitted to review them on the computer during deliberations. The appellant urges that it was denied the benefit of re-evaluating evidence upon which the jury based its verdict, which was necessary for the preparation of post-trial motions and appeal.

However, it appears from the transcript of the proceedings that the appellant had ample opportunity during the three-day trial to obtain from the disks whatever information it deemed pertinent to its defense. A trial court has a wide discretion in regulating the business of the court, *Brown v. Southern Aggregates Co.*, 207 Ga. App. 886 (1) (429 SE2d 294) (1993), and we find no abuse of that discretion in denying the appellant further access to the disks.

*Judgment affirmed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED JULY 12, 1994 —
RECONSIDERATION DENIED JULY 26, 1994 — 

*Rich, Bass, Kidd & Witcher, Merck R. Smith,* for appellant.
*Billy R. Smith,* for appellees.