A98A1833. MACON-BIBB COUNTY HOSPITAL AUTHORITY
v. REECE et al.
(513 SE2d 243)

McMurray, Presiding Judge.

OCGA § 42-5-2 (a) imposes "the responsibility [on] the governmental unit, subdivision, or agency having the physical custody of an inmate to maintain the inmate, furnishing him food, clothing, and any needed medical and hospital attention." Plaintiff Macon-Bibb County Hospital Authority ("the Hospital") brought this action on an account against defendants Jones County, Georgia, and Jones County Sheriff Robert N. "Butch" Reece, seeking to recover the expenses of medical treatment to gunshot wounds provided to three men brought to the Hospital by Jones County Sheriff's Deputy Guy Mosteller. In a prior appeal, the grant of summary judgment to defendants was reversed, but the denial of summary judgment to plaintiff Hospital was affirmed. *Macon-Bibb County Hosp. Auth. v. Reece*, 228 Ga. App. 532 (492 SE2d 292). Viewed in the light most favorable to the party prevailing before the trier of fact, the evidence at a subsequent jury trial revealed the following:

Throughout the spring of 1995, the Jones County Sheriff's Office and the Georgia Bureau of Investigation investigated Larry J. Palmer for suspected drug selling. At approximately 2:00 a.m. on May 25, 1995, Jones County Sheriff's Deputy Guy Mosteller was dispatched to the Palmer residence to investigate a reported "burglary in progress [with] shots fired." Deputy Mosteller was subsequently informed that "three . . . males had left [Palmer's] in a small white car . . . traveling at a high rate of speed[,] coming towards Gray highway. . . . [Deputy Mosteller] clocked their vehicle on radar at 75 miles per hour." Deputy Mosteller activated his "lights and siren . . . and [followed the 1989 white Nissan 240SX] for at least two miles before the car [containing three males] stopped. . . . [The driver, Robbie Freeman,] opened the door, stepped out and staggered. It didn't look like he could stand up too well. . . . [Deputy Mosteller] asked . . . why was he going so fast, and [Robbie Freeman] said he'd been shot." Officer Bloodworth from the City of Gray arrived, and the two officers removed the other two occupants, Antonio Hughes and Handy R. Taylor. "Officer Bloodworth patted down Mr. Taylor, found a gun in his pocket and . . . immediately handcuffed Mr. Taylor. Mr. Taylor [was] pleading [for] help. He said that he had been shot and his brother[, Robbie Freeman,] had been shot. . . . He wanted us

[the officers] to get him help. He said that, 'My brother's been shot. He's going to die. He wants help.' "

A second handgun was discovered in the car, and both weapons were confiscated. Deputy Mosteller noticed that Antonio Hughes was bleeding in the neck area, that Handy Taylor's right hand was bleeding, and that Robbie Freeman had been wounded in the knee. Robbie Freeman and Antonio Hughes were handcuffed by Deputy Mosteller, and an ambulance was summoned. Deputy Mosteller "never formally booked the three men or charged them with any crime" arising out of this encounter. Specifically, he exercised his discretion not to charge the driver with exceeding the posted speed limit because they "needed medical treatment." Deputy Mosteller "had no idea [just what had occurred at the Palmer residence. He] didn't know if these guys may have been victims or if they may have shot each other or how they got hurt. [He] just knew they were shot. . . . When Officer Bloodworth arrived, [the officers] were still outnumbered three to two. . . . [Freeman's] hand gun was visible from the side of the road from [Deputy Mosteller's] standpoint. [The three men from the car were handcuffed for the officers'] safety, [because Deputy Mosteller] didn't know if they might have had another gun or if they might try to attack us [the officers]. [So exercising prudence, the officers] handcuffed them and set them down in the . . . median [to await the ambulance]."

The three men remained in handcuffs while in the ambulance until they got to the hospital, where Deputy Mosteller removed the cuffs from all three men. He never placed them in handcuffs again. Deputy Mosteller received plaintiff's Exhibits 1, 2, and 3 from a "lady in the emergency room." These pre-printed forms are captioned "LAW ENFORCEMENT AGENCY APPROVAL FOR INITIAL MEDICAL TREATMENT OF PRISONERS." Line four contains the pre-printed statement: "The patient is a prisoner of _____ [blank]." In response to this inquiry, Deputy Mosteller filled in "Jones County S. O." but "explained to her, . . . 'These subjects are not prisoners.' . . . 'They're not Jones County prisoners.' . . . [O]n the form [Deputy Mosteller noted:] that the patient will be responsible for the bill and, at the bottom, send the bill to the patient because [Deputy Mosteller knew of] no reason to send it to [the Jones County Sheriff's Office]."

The jury found for defendants. Plaintiff's motion for new trial was denied, and this appeal followed. *Held*:

1. Plaintiff first contends the trial court erred in refusing to give the following written requests to charge:

No. 6: " '(when) Mosteller handcuffed the men and sat them down in the median of the road, he placed them under arrest.' "

No. 7: " '[T]he facts clearly indicate that the men were under

arrest when they entered the hospital in handcuffs with Deputy Mosteller.' "

Plaintiff argues these charges are correct statements of the law because they are the law of the case, as quoted from the prior appeal. We disagree.

"A request to charge must embody a correct, applicable and complete statement of law, legal and perfect in form and adjusted to the pleadings and evidence; it must not be argumentative or seek an expression of opinion on the part of the court; and it must not be so phrased so as to have tendency to confuse and mislead the jury or to becloud the issues in the case." (Citations and punctuation omitted.) *Gen. Ins. Svcs. v. Marcola*, 231 Ga. App. 144, 147 (4) (497 SE2d 679). "Even though language used by an appellate court in a decision may embody sound law, it is not always appropriate to employ such language in instructing the jury. Such an instruction may be helpful in explaining a principle of law but ambiguous to a jury." *Davis v. Cincinnati Ins. Co.*, 160 Ga. App. 813, 815 (1) (288 SE2d 233).

The requested instructions are indeed based on statements in the prior appeal, but there they occur in the context of this Court's de novo review of all the evidence on appeal from the grant of summary judgment to defendant-appellees. " '[I]f subsequent to an appellate decision, the evidentiary posture of the case changes in the trial court, the law of the case rule does not limit or negate the effect that such change would otherwise mandate.' [Cit.]" *Stiltjes v. Ridco Exterminating Co.*, 192 Ga. App. 778, 779 (2) (a) (386 SE2d 696). The statements from our prior decision as relied on by plaintiff do not constitute the law of the case as to what the evidence *demanded* but determined only what the trier of fact was *authorized* to conclude, after drawing all reasonable inferences in favor of the Hospital as the non-movant. The trier of fact is under no such obligation to view the evidence in the light most favorable to the Hospital upon the trial of the case. The question whether these three individuals were, for purposes of OCGA § 42-5-2 (a), inmates[1] subject to the physical custody of the Jones County Sheriff's Office involves an examination of all the surrounding circumstances, but "the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." (Citations and punctuation omitted.) *McConville v. State*, 228 Ga. App. 463, 465 (1) (491 SE2d 900). Thus, the fact that the three men had been handcuffed for transportation to the hospital is not determinative of their

---

[1] We express no opinion whether the three passengers met the statutory definition of "inmate" applied in *Macon-Bibb County Hosp. Auth. v. Houston County*, 207 Ga. App. 530, 531 (1) (428 SE2d 374). See also *Macon-Bibb County Hosp. Auth. v. Reece*, 228 Ga. App. 535 (2), supra.

subsequent status, when the handcuffs were removed.[2] Consequently, it is our view that plaintiff's written requests are argumentative, incomplete and impermissibly seek an expression of opinion on the evidence from the trial court. The trial court did not err in refusing to give requests which were argumentative. *Gen. Ins. Svcs. v. Marcola*, 231 Ga. App. 146-147 (4), supra. This is so even though the language of the request is drawn from an opinion of this Court. *Ellerbee v. State*, 215 Ga. App. 102, 105 (6) (449 SE2d 874).

2. Plaintiff's second enumeration complains of the denial of its motion for partial directed verdict as to whether "the three men were under arrest from the time the Jones County Sheriff's Deputy removed them from their vehicle, patted them down, and placed them in handcuffs at least until such time as the handcuffs were removed." Plaintiff again relies on the law of the case rule to fix this evidentiary point.

OCGA § 9-11-60 (h) provides: "The law of the case rule is abolished; . . . provided, however, that any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be."

In the prior appeal, this Court affirmed the denial of plaintiff's motion for summary judgment. *Macon-Bibb County Hosp. Auth. v. Reece*, 228 Ga. App. 535 (2), supra. This Court also expressly concluded that "a jury could also find from this evidence that the men were not in custody when medical care was rendered, [in which] case, the county would have no liability for the medical expenses incurred." Id. at 534 (1). Thus, if the "law of the case" applies to this appeal in any fashion, it requires a ruling that the jury should determine whether the three men were inmates under the physical custody of the Jones County Sheriff's Office because the evidence did not demand a finding either way. See `Goodyear Tire &c. Co. v. Johnson`, 120 Ga. App. 395, 396 (1) (170 SE2d 869); *King v. Simmons*, 110 Ga. App. 494, 495 (138 SE2d 919). The trial court correctly refused to direct a partial verdict, to the effect that the men were in fact under arrest at any particular time.

3. The third enumeration is rendered moot by our holdings in Divisions 1 and 2.

*Judgment affirmed. Blackburn and Eldridge, JJ., concur.*

DECIDED FEBRUARY 26, 1999 — ■

---

[2] Any question whether this procedure was a subterfuge designed to avoid the financial responsibility imposed by OCGA § 42-5-2 (a) also is for the trier of fact.

*Sell & Melton, John A. Draughon, Kevin T. Brown,* for appellant.
*Groover & Childs, Duke R. Groover, Frank H. Childs, Jr.,* for appellees.